**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210362-U

Order filed January 5, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* Al.G., Ah.G., and K.H., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Minors | ) | Peoria County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal Nos. 3-21-0362, 3-21-0363, and |
| Petitioner-Appellee, | ) | 3-21-0364 |
| | ) | Circuit Nos. 19-JA-132, 19-JA-133, and |
| v. | ) | 19-JA-378 |
| | ) | |
| J.H., | ) | |
| | ) | The Honorable |
| Respondent-Appellant). | ) | Frank W. Ierulli, |
| | ) | Judge, presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Hauptman and Lytton concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court did not err when it found it to be in the minors' best interest to terminate the respondent's parental rights.

¶ 2    The circuit court entered orders finding the respondent, J.H., to be an unfit parent and

terminating her parental rights to the minors, Al.G., Ah.G., and K.H.  On appeal, the respondent

argues that the circuit court erred when it found it was in the minors' best interest to terminate her parental rights. We affirm.

¶ 3                                                    I.  BACKGROUND

¶ 4        On May 10, 2019, the state filed juvenile petitions regarding Al.G. (born March 29, 2016) and Ah.G. (born August 5, 2017), alleging that they were neglected by reason of an injurious environment. The petition alleged that the respondent had mental health issues, including schizophrenia and bipolar disorder, for which she was not taking medication; and that she had a history of taking the minors to the hospital and not cooperating with medical staff. The petition further stated that she took the minors to emergency rooms twice in early April 2019 for back pain and on the second occasion, she became aggressive with a physician who refused to perform an MRI on Al.G. The physician wanted to perform an X-ray first. When the respondent was told she was not allowed into the X-ray room because she was pregnant, she refused to allow medical staff to take Al.G. to complete the X-ray. At a follow-up appointment on May 6, 2019, the family physician reported that she did not believe Ah.G. could verbally express that her back hurt, nor did she believe that the minors actually had any back pain. The family physician also reported that she was concerned for the minors' well being due to the respondent's mental health issues.

¶ 5        The petition also detailed an incident from May 1, 2019, in which the respondent took the minors to the hospital and stated that they had been sexually assaulted. The respondent was uncooperative with medical staff and would not talk to them or to the Department of Children and Family Services (DCFS). The petition described the respondent as paranoid at the appointment, as she refused to leave the room at any time, wore an adult diaper and urinated in it

2

rather than leave the room, alleged the doctor was looking at Ah.G. inappropriately, and demanded that she be the one to perform the sexual assault tests on the minors.

¶ 6        Further, the petition alleged that the respondent failed to show up at the Children's Advocacy Center for an interview regarding the sexual assault allegations. She also failed to show up at the rescheduled appointment. She then told police that she would not allow Al.G. to be interviewed and that she would not cooperate with the investigation.

¶ 7        In addition, the petition alleged that when the police and DCFS came to take protective custody of the minors in May 2019, the respondent became violent and attempted to physically attack a DCFS employee. She was also combative and aggressive with the police. The next day, the respondent was admitted to a hospital's mental health ward.

¶ 8        The petition also alleged that the respondent had anger issues, as evidenced by an incident in September 2018 when she pushed a person at the Dream Center and an incident in February 2019 when she approached a neighbor and threatened to physically assault her. During that second incident, the respondent got naked and continued to threaten her neighbor.

¶ 9        Lastly, the petition alleged that the respondent had an intact case between October 2018 and April 2019, but she refused to complete the mental health portion of the case.

¶ 10        On August 5, 2019, the circuit court held an adjudicatory hearing and found that Al.G. and Ah.G. were neglected based on the allegations of the petitions; the respondent's mental health issues, which were affecting her parenting ability; and the respondent's lack of cooperation with medical treatments for the minors.

¶ 11        On September 16, 2019, the circuit court held a dispositional hearing at the conclusion of which it found the respondent to be an unfit parent. The respondent was also ordered to complete numerous tasks, including: (1) executing all authorizations for releases of information

requested by DCFS or its designees; (2) cooperate with DCFS and its designees; (3) obtain a drug and alcohol assessment and follow any associated recommendations; (4) perform two random drug drops per month; (5) obtain a psychological examination and follow any associated recommendations; (6) participate in and complete individual counseling; (7) participate in and complete a parenting course; (8) participate in and complete a domestic violence course; (9) obtain and maintain stable housing; (10) notify the caseworker of any changes in address, phone number, or household members within three days; (11) provide DCFS with information on any persons having a relationship that would affect the minors; (12) visit with the minors as scheduled; (13) engage in mental health services and follow any recommendations; and (14) participate in anger management.

¶ 12        On October 22, 2019, the state filed a juvenile petition regarding K.H. (born October 17, 2019), alleging that he was neglected by reason of an injurious environment. The petition stated that the respondent had been found unfit regarding Al.G. and Ah.G. and that she had been diagnosed with bipolar disorder, schizophrenia, and psychosis. The petition also repeated the allegations from the previously mentioned petitions regarding the hospital visit at which the respondent alleged Al.G. and Ah.G. had been physically assaulted, as well as the incident during which the respondent fought with the police when DCFS came to take protective custody of the minors. In addition, the petition alleged that in June 2019, the respondent shoved a supervisor during a visit with Al.G. and Ah.G. She was later psychiatrically hospitalized. Lastly, the petition alleged that in July 2019, the respondent knocked items off the shelves in a Dollar Tree store and fought with the responding police.

¶ 13        In January 2020, the respondent stipulated to the petition and K.H. was adjudicated neglected. In March 2020, the circuit court held a dispositional hearing at the conclusion of

which it found the respondent to be an unfit parent. She was ordered to complete numerous tasks, which consisted of most of the tasks she was assigned regarding Al.G. and A.H.

¶ 14     On May 25, 2021, the state filed a petition for termination of the respondent's parental rights to the minors. The petition alleged that the respondent was unfit because she failed to make reasonable progress toward the return of the minors to her care during the nine-month period from September 24, 2019, to June 24, 2020.

¶ 15     On August 9, 2021, the circuit court held a hearing on the respondent's parental fitness. The caseworker, Ashley Woods, answered questions regarding permanency-review reports and testified regarding the respondent's inability to make progress on her tasks. The respondent appeared at the hearing after Woods had testified and the attorneys presented arguments. The court allowed the proofs to be reopened, but ultimately the court did not allow her to testify because she would only "promise to tell the truth" rather than swear or affirm that her testimony would be truthful. Defense counsel did not object to the circuit court refusing to allow the respondent to testify and did not present any evidence on behalf of the respondent. Thereafter, the court found that the respondent was an unfit parent as alleged in the petition.

¶ 16     By agreement of the parties, the circuit court held a best-interest hearing immediately after the unfitness finding was entered. The court accepted into evidence best-interest hearing reports compiled on June 4, 2021, for each minor. The three-page reports, compiled by Woods, stated that the minors had been placed in the same foster home and had been there since they were removed from the respondent's care. The minors were strongly attached to the foster parents, who were including them in family activities and were providing for their basic needs in an appropriate home. The minors were also forming bonds with the foster parents' extended

families.  The foster parents had also expressed willingness to adopt the minors.  Woods also noted that the minors had not visited with the respondent since November 2020.

¶ 17        Woods testified in accord with her best-interest hearing report.  During her testimony, Woods also stated that the respondent had not visited with the minors since November 2019[1] and that they had not asked about the respondent.  During the visits the respondent did have with the minors, Woods did not observe a bond between them.  Woods stated, "[a]t times it felt like forced interaction between mom and [Al.G.] and [Ah.G.]  It felt forced like she wanted to be near them at times when they would be engaging and playing or with each other.  At one other point [Al.G.] wanted me during the visit, and that is one of the times that [the respondent] became very, very angry and accused me of touching him sexually."

¶ 18        The respondent testified that she had a bond with the minors.  Regarding K.H., she testified that she spent the entire time in the neonatal intensive care unit with him and that she visited with him in 2019.  She said that all three minors called her "mada," which was a spiritual term for mother.  She also stated that the minors showed physical affection toward her at visits and wanted to interact with her.  She denied ever alleging that Woods touched the minors in a sexual manner.  She had a home for the minors and could provide for their physical safety, welfare, and nutritional and clothing needs.  She also had income from Social Security.  On cross-examination, the respondent admitted that she had not visited with the minors since 2019.

¶ 19        At the close of the hearing, the circuit court found that it was in the minors' best interest to terminate the respondent's parental rights.  The court noted that the minors' current placement was meeting their needs for "physical safety and welfare including food, shelter, health, and clothing and has for quite some time."  The court also noted that the placement was "where the

_____

[1] We have noted the discrepancy between the best-interest report and Woods' testimony regarding the respondent's last visitation.

6

children's identity lies, where their background familial ties lie, it's where their sense of attachments lie, it's the least disruptive placement alternative for the children. It also provides permanence for the children." The respondent appealed.

¶ 20                                     II. ANALYSIS

¶ 21        The respondent's sole argument on appeal is that the circuit court erred when it terminated her parental rights to the minors. Accordingly, our analysis is strictly limited to the best-interest portion of the proceedings. We have no authority to review any other potential issues in the case, including anything related to the respondent's tasks or the fact that the circuit court did not allow the respondent to testify at the unfitness hearing.

¶ 22        Section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS § 405/1-3(4.05) (West 2020)) provides that when determining a child's best interest, certain factors must be considered in light of the child's age and developmental needs:

> "(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;
>
> (b) the development of the child's identity;
>
> (c) the child's background and ties, including familial, cultural, and religious;
>
> (d) the child's sense of attachments, including:
>
>> (i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);
>>
>> (ii) the child's sense of security;
>>
>> (iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child."

*Id.*

¶ 23      Our supreme court has stated the following regarding a best-interest hearing:

"Following a finding of unfitness *** the focus shifts to the child. The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated. Accordingly, at a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004).

The State's burden of proof is a preponderance of the evidence. *Id.* at 365. On review, we will not disturb a circuit court's best-interest determination unless it is against the manifest weight of the evidence. *In re D.F.*, 201 Ill. 2d 476, 498 (2002).

8

¶ 24  The respondent's argument on appeal is misplaced, as it focuses almost exclusively on her, rather than the children.  See. *D.T.*, 212 Ill. 2d at 364.  In essence, we have been provided very little to review in this case.  When the evidence is properly considered in light of the children's best interest, we find no error in the circuit court's best-interest determination, as all of the statutory factors favored termination of the respondent's parental rights.  The foster parents were providing for the children's basic needs, they had been with the same foster family since they were removed from the respondent's care, and they were developing identities in the foster home.  The children were strongly bonded to the foster parents and were thriving in the foster home.  Further, the foster parents expressed their intent to adopt all three of the children.  Under these circumstances, we hold that the circuit court's best-interest determination was not against the manifest weight of the evidence.

¶ 25         III.  CONCLUSION

¶ 26  The judgment of the circuit court of Peoria County is affirmed.

¶ 27  Affirmed.